# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **INTERNAL REVENUE SERVICE,** | ) | |
| | ) | |
| APPELLANT | ) | |
| | ) | |
| v. | ) | **CIVIL NO. 2:14-CV-340-DBH** |
| | ) | **(BANKRUPTCY NO. 09-2042)** |
| **WILLIAM CHARLES MURPHY,** | ) | |
| | ) | |
| APPELLEE | ) | |

## DECISION AND ORDER ON DEFENDANT'S APPEAL FROM BANKRUPTCY COURT'S DENIAL OF 60(b) MOTION

On this appeal, the Internal Revenue Service ("IRS") seeks to overturn the bankruptcy court's refusal to vacate under Rule 60(b) a 2010 summary judgment. That summary judgment was rendered against the IRS and in favor of the bankrupt taxpayer in an adversary proceeding within bankruptcy core jurisdiction. The IRS requested relief from the bankruptcy court's summary judgment just shy of four years after the bankruptcy court entered it. The IRS's primary ground for relief is the assertion that the Tax Division of the Department of Justice ("DOJ") learned only recently that the Assistant United States Attorney ("AUSA") who handled bankruptcy court matters in Maine was suffering from dementia at the time of the summary judgment motion and as a result filed an inadequate opposition.[1] Alternatively, the IRS argues that the bankruptcy court's summary judgment order was void on account of sovereign immunity and

---

[1] This lawyer was a responsible and highly respected member of the bar of this court and the bankruptcy court for many years.

the Tax Anti-Injunction Act, because the bankruptcy court mandated that the IRS unwind certain steps that it took that improved its position as a creditor after the bankruptcy court entered a judgment of discharge for the bankrupt taxpayer.

After oral argument on February 10, 2015, and supplemental briefing, I **AFFIRM** the bankruptcy court's decision. The judgment is not void under Rule 60(b)(4), given the power that Congress has accorded bankruptcy courts, and the bankruptcy court did not abuse its discretion in denying relief under the "catch-all" provision of Rule 60(b)(6) ("any other reason that justifies relief").

## FACTS

For purposes of this appeal, I take the facts, from the record and as propounded in the briefs, in the light most favorable to the IRS as the 60(b) movant, although the taxpayer disputes the IRS's allegations related to the AUSA's illness, its onset, and its impact on this litigation. I do so because the bankruptcy court denied the IRS's motion for relief without an evidentiary hearing and, if the facts as the IRS describes them support a finding for relief under Rule 60(b), then the appropriate course is to remand and direct the bankruptcy court to "hold an evidentiary hearing in order to determine if the allegations are indeed true." United States v. Baus, 834 F.2d 1114, 1123 (1st Cir. 1987).

The taxpayer William C. Murphy ("Murphy") filed for Chapter 7 bankruptcy protection on October 13, 2005. Voluntary Petition, In re Murphy, Ch. 7 Case No. 05-22363, (Oct. 13, 2005) (Bankr. ECF No. 1). He listed taxes owing for 1993–1997, 2000, 2001, and 2003. Id. at 11–13. The bankruptcy court granted

his discharge on February 14, 2006.  <u>In re Murphy</u>, Ch. 7 Case No. 05-22363 (Feb. 14, 2006) (Bankr. ECF No. 5).[2]

Before filing his 2005 bankruptcy petition, Murphy paid $49,050[3] that he designated for his 2003 tax liabilities and $16,500 that was undesignated. Initially, the IRS applied those payments to Murphy's 2003 and 2002 tax liabilities respectively.  Because debts for any taxes for which a return is due within three years of the filing of the petition are not discharged, 11 U.S.C.A. § 507(8)(A)(i), listed in § 523(a)(1)(A), Murphy's 2002 and 2003 tax liabilities were excepted from his 2006 bankruptcy discharge.  But after the 2006 bankruptcy discharge, the IRS reassigned Murphy's 2003 $49,050 tax payment and 2002 $16,500 tax payment to his 1994 and 1993 tax liabilities, years that were subject to his bankruptcy discharge.[4]  The IRS also sent notices of levies to Murphy's bank and clients.

On August 14, 2009, Murphy brought an adversary proceeding in bankruptcy court, seeking a declaration that his 2006 bankruptcy discharge covered the taxes owing for 1993–1997, 2000, and 2001, challenging the IRS attempts to collect taxes for the years covered by his bankruptcy discharge, and

---

[2] Murphy's 2003 tax liabilities were excepted from discharge.  11 U.S.C.A. § 507(8)(A)(i), listed in § 523(a)(1)(A).

[3] The Tax Division of the Department of Justice describes this amount as $49,059.  <u>See</u> Br. of Appellant at 11, <u>I.R.S. v. Murphy (In re Murphy)</u>, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5).  And in fact, Murphy's Motion for Summary Judgment requested reapplication of $49,059. Pl.'s Mot. for Summ. J. at 5, <u>Murphy v. I.R.S. (In re Murphy)</u>, Ch. 7 Case No. 05-22363, Adv. No. 09-2042 (May 4, 2010) (Bankr. ECF No. 41).  However, Bankruptcy Judge Haines' order, from which the Government seeks relief, describes the payment as $49,050.  This difference is small, but for purposes of consistency, I refer to the payment Murphy made toward his 2003 tax liability as $49,050.

[4] The effect of this reassignment is that the IRS collected taxes for years that were protected by the discharge (1993 and 1994) and reduced its previous credit to Murphy for his 2002 and 2003 tax liabilities, liabilities where Murphy has no bankruptcy discharge protection against IRS collection efforts.

asking that the IRS be enjoined from all collection activities concerning the discharged tax liabilities. Compl., <u>Murphy v. I.R.S. (In re Murphy)</u>, Ch. 7 Case No. 05-22363, Adv. No. 09-2042 (Aug. 14, 2009), (Bankr. ECF No. 1). Because the AUSA handling bankruptcy proceedings in this District accepted service of the complaint, Murphy's counsel did not mail a copy of the complaint to the Attorney General, as Bankruptcy Rule 7004(b)(5) would otherwise require. The Justice Department Tax Division and the Boston IRS Office of Chief Counsel were unaware of the commencement of the adversary proceeding. Br. of Appellant at 11, <u>I.R.S. v. Murphy (In re Murphy)</u>, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5). But the IRS insolvency adviser did know of the adversary case and agreed to a preliminary injunction, which required the AUSA to notify the IRS, its agents, and its attorneys that the IRS was barred from taking any further collection actions against Murphy for tax years 2001 and earlier until the lawsuit was resolved. Br. for IRS at 7, <u>I.R.S. v. Murphy</u>, Adv. No. 09-2042 (May 1, 2014) (Bankr. ECF No. 53).

In opposing Murphy's adversary proceeding, the AUSA in this District took the position that the tax obligations were excepted from the 2006 discharge under Bankruptcy Code section 523. Response and Objection for IRS at 2, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (Jan. 22, 2010) (Bankr. ECF No. 33). As the bankruptcy court noted in its pretrial order, the IRS bore the burden of proving the applicability of an exception to the 2006 discharge. Pretrial Order at 6, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (Oct. 20, 2009) (Bankr. ECF No. 19). The

AUSA took limited discovery[5] and at the close of discovery Murphy moved for summary judgment that his earlier tax liabilities had been discharged by the 2006 bankruptcy discharge, and requested an order reassigning the payments of $16,500 and $49,050 to the 2002 and 2003 tax liabilities as the IRS had previously applied them.

The AUSA's opposition to the summary judgment motion contained allegations that, if supported by evidence, would have raised a triable issue of fact as to whether Murphy's tax liabilities were excepted, but the AUSA failed to cite any supporting evidence. Br. of Appellant at 14, I.R.S. v. Murphy, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5). On June 22, 2010, the bankruptcy judge granted Murphy's summary judgment motion from the bench, stating: "I've looked at the summary judgment record very carefully and frankly, somewhat surprisingly, I'm not of the view that the IRS has put forth qualified, evidentiary quality—by affidavit or otherwise—materials that create disputed issues of material fact, and therefore I'm going to enter summary judgment for the plaintiff." Bench Ruling (Audio), Murphy v. I.R.S., Adv. No. 09-2042 (June 22, 2010) (Bankr. ECF No. 50).

In the ensuing order, the bankruptcy court ruled that after the bankruptcy discharge, the IRS had "wrongfully reversed" its earlier application of the $16,500 and $49,050 payments. The bankruptcy court directed the IRS to

---

[5] In its brief in the bankruptcy court and this court the IRS said that the AUSA took no discovery. Br. for IRS at 8, Murphy v. I.R.S., Adv. No. 09-2042 (May 1, 2014) (Bankr. ECF No. 53); Br. of Appellant at 13, I.R.S. v. Murphy, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5). But in its reply brief in the bankruptcy court, the IRS corrected the assertion, Reply Br. for IRS at 7, n.7, Murphy v. I.R.S., Adv. No. 09-2042 (June 12, 2014) (Bankr. ECF No. 74), and recognized that the AUSA did serve a request for production of documents. However, the IRS remains critical of the AUSA's failure to take the taxpayer's deposition. Id.

reassign those payments to 2002 and 2003, their original application. Order Granting Mot. for Summ. J., <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (June 22, 2010) (Bankr. ECF No. 48). Non-lawyer employees of the IRS insolvency unit were informed of the adverse summary judgment. Reply Br. for IRS at 7, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (June 12, 2014) (Bankr. ECF No. 74). The IRS did not appeal the Bankruptcy Court's summary judgment.

On February 28, 2011, Murphy filed a second adversary complaint against the IRS under Internal Revenue Code section 7433(e), which permits a taxpayer to recover damages resulting from the IRS's willful disregard of a bankruptcy discharge. Compl., <u>Murphy v. I.R.S. (In re Murphy)</u>, Ch. 7 Case No. 05-22363, Adv. No. 11-2020 (D. Me. Feb, 28, 2011) (Bankr. ECF No. 1). In his second adversary complaint, Murphy alleged that the IRS had violated Bankruptcy Code section 524 by levying on his discharged tax liabilities. Discovery closed on August 1, 2012, with no discovery taken by the AUSA. Request for Status Conference at 1, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Dec. 11, 2012) (Bankr. ECF No. 52).

According to a declaration of the First Assistant United States Attorney for the District of Maine ("the First Assistant"), which was filed in the second adversary proceeding in February of 2014, individuals who worked with the AUSA began to notice changes in the AUSA's behavior beginning in May or June of 2012. R. Murphy Decl. at 2, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Feb. 28, 2014) (Bankr. ECF No. 142-2). As described in the declaration, two information technology employees informed the administrative officer that the AUSA had been locked out of his computer due to mis-entry of passwords, and that he had

some trouble updating them.  Id.  Around the same time, a paralegal voiced concern about the AUSA's physical demeanor and his difficulty with use of his computer.  Id.  Others noted that the AUSA seemed lethargic and that he had trouble with the use of his hands.  Id.

Based on these reports, the administrative officer and the First Assistant called the Director of Personnel in the Executive Office of the United States Attorneys, and informed the Director that, while the AUSA would be retiring at year's end, some employees had expressed concern.  Id. at 2–3.  The Director indicated that if there were no appreciable performance issues, the United States Attorney's office should monitor the situation as the AUSA progressed toward retirement.  Id.

Sometime in the summer of 2012, a Bangor attorney called the United States Attorney's office front desk to report that he had tried to reach the AUSA regarding discovery that the AUSA was to have provided a few months prior.  Id. at 3–4.  The First Assistant said that, to the best of his recollection, he discussed this issue with the AUSA and assumed that it was resolved.  Id.

On August 13, 2012, the U.S. Attorney met with Chief Bankruptcy Judge Haines to inform him that a new AUSA would be taking over the office's bankruptcy practice, in light of the AUSA's impending retirement.  Judge Haines indicated that he "had seen some change" in the AUSA's demeanor.  R. Murphy Decl. at 4, Murphy v. I.R.S., Adv. No. 11-2020 (Feb. 28, 2014) (Bankr. ECF No. 142-2).  Two days later, the administrative officer called the Employee Assistance Program and disclosed that the AUSA "had displayed blank stares, was falling asleep, had forgotten a deposition and was late on discovery in a case, had

problems logging into his computer, had not been responsive to lawyers outside of the office, and mentioned 'dementia symptoms.'"[6] Id.

On August 28, 2012, the U.S. Attorney spoke with a person who had known the AUSA for many years. This person told the U.S. Attorney that the AUSA "may have been diagnosed with ALS." Id. On October 24, 2012, the AUSA's domestic partner disclosed to the administrative officer that the AUSA "had been diagnosed with ALS and frontal lobe dementia." Id. By this stage, "a substantial portion of open bankruptcy matters had been transferred" to another AUSA. At the end of October, this latter AUSA informed Tax Division counsel that the AUSA previously handling the matters had been diagnosed with dementia and ALS. Id.

On December 11, 2012, counsel from the Tax Division of the DOJ informed the court in a request for a status conference in the second adversary proceeding that the AUSA "is no longer assigned to this case due to his imminent retirement and for personal reasons" and that the DOJ would be taking over the defense of the adversary proceeding on behalf of the United States. Request for Status Conference at 1, Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 11, 2012) (Bankr. ECF No. 52). In this same filing, Tax Division counsel disclosed that he had sought to reach an agreement to re-open discovery in the second adversary proceeding. Id. at 3.

_____

[6] The First Assistant noted in his declaration that "the 'missed deposition' had not been missed, and that the late discovery and non-responsiveness were references to the [Bangor lawyer's phone call] . . . ." The administrative officer recently told the First Assistant "that she did not recall if the term 'dementia symptoms' was hers or whether an employee had used that term." R. Murphy Decl. at 4, Murphy v. I.R.S., Adv. No. 11-2020 (Feb. 28, 2014) (Bankr. ECF No. 142-2).

On December 20, 2013, the bankruptcy court granted partial summary judgment to taxpayer Murphy in the second adversary proceeding. Specifically, it ruled that the preclusive effect of the June 22, 2010, summary judgment order estopped the IRS from asserting that Murphy's tax debts were not discharged; as a result, liability (not damages) was established. Order Granting Summ. J., Murphy v. I.R.S., Adv. No. 11-02020 (Dec. 20, 2013) (Bankr. ECF Nos. 94–95). Although the IRS sought an interlocutory appeal, on February 3, 2014, I denied the request, Murphy v. I.R.S., No. 2:14-mc-24-DBH, 2014 WL 840255 (D. Me. Mar. 4, 2014), ruling that the appeal should await final judgment. That appeal is still not before me or any other district judge.

In March of 2014, "government counsel persuaded the AUSA's healthcare power of attorney to authorize his medical providers to release" the AUSA's medical records "without a subpoena." Br. of Appellant at 17, I.R.S. v. Murphy, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5). "The government then obtained records revealing that the AUSA had been diagnosed in late 2011, confirmed in 2012, with frontotemporal dementia ["FTD"], coupled with amyotrophic lateral sclerosis, and learned that three physicians all agreed that the dementia had its inception prior to the May 2010 summary judgment proceedings in this adversary proceeding." Id.

On May 1, 2014—more than 18 months after the United States Attorney's Office and the Tax Division of the DOJ learned that the AUSA was suffering from dementia—Tax Division counsel moved the bankruptcy court under 60(b)(6) and 60(b)(4), made applicable to bankruptcy proceedings pursuant to Bankruptcy

Rule 9024.[7]  Mot. to Vacate Final Order of June 22, 2010, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 1, 2014) (Bankr. ECF No. 52).   The motion asked the bankruptcy court to vacate the June 22, 2010 summary judgment in the first adversary proceeding that (1) ruled that Murphy's income taxes for the years 1993–1997, 2000, and 2001 had been discharged and (2) ordered the IRS to reapply his prepetition payments to the tax years to which the IRS had assigned them before the discharge.   <u>Id</u>.   In its 2014 motion, the IRS argued that the AUSA's dementia caused deficiencies in his 2010 summary judgment briefing that led to the adverse summary judgment against it.   Br. in Supp. of Mot. to Vacate Final Order of June 22, 2010, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 1, 2014) (Bankr. ECF No. 53).   Thus, the IRS argued, it was entitled to relief under the catch-all provision of Rule 60(b)(6), which relieves a party from a final judgment for "any other reason that justifies relief."   <u>Id</u>.   Further, the IRS asserted that the injunction directing the IRS to reassign the payments of the $16,500 and $49,050 to the 2002 and 2003 tax liabilities was void under 60(b)(4).   <u>Id</u>.

The bankruptcy court denied the motion without an evidentiary hearing.[8] The bankruptcy court held that the 60(b)(6) motion was untimely, and that "the failures to act and omissions by counsel could have been ascertained at the time, if indeed there were such failures, if there had been appropriate review during the course of the handling of the matter."   Tr. of Bench Ruling at 8, <u>Murphy v.</u>

---

[7] Rule 9024 applies Rule 60 of the Federal Rules of Civil Procedure, subject to three exceptions that are inapplicable here.  Fed. R. Bankr. P. 9024.  Hereafter, I refer only to Rule 60.
[8] The parties waived oral argument before the bankruptcy court.  Consented-to Request at 1, <u>Murphy v. I.R.S.</u>, No. Adv. No. 09-2042 (June 3, 2014) (Bankr. ECF No. 69).

I.R.S., Adv. No. 09-2042 (June 25, 2014) (Bankr. ECF No. 80).  The bankruptcy court construed the 60(b)(4) motion as based on the IRS's assertion of a lack of personal jurisdiction, which "would have been an error of law and should have been addressed in a timely appeal."  Id. at 9.  Because the "government took no appeal," the court found that the "motion under 60(b)(4) fails as well."  Id.  The bankruptcy court did not address the IRS's sovereign immunity or Tax Anti-Injunction Act arguments.  This timely appeal followed.

### ANALYSIS

The IRS asks this court to overturn the bankruptcy court's refusal to set aside the judgment under Rule 60(b), asserting that the AUSA was suffering from dementia at the time of summary judgment, that this illness caused his deficient performance in opposing the summary judgment motion, that this circumstance amounts to "any other reason that justifies relief" under Rule 60(b)(6), and that in any event the summary judgment was "void" within the meaning of Rule 60(b)(4).  Like the bankruptcy court, I take the IRS's factual allegations concerning the circumstances of the motion as correct for purposes of this appeal.  Baus, 834 F.2d at 1121.  Despite the IRS's efforts to portray the taxpayer as a n'er-do-well in the underlying tax dispute, I also follow the First Circuit's admonition that assessing the merits of the underlying decision plays no role in the analysis of whether to vacate under Rule 60(b).  Karak v. Bursaw Oil Corp., 288 F.3d 15, 18–19 (1st Cir. 2002).

Relief under Rule 60(b) is "extraordinary in nature," and "motions invoking that rule should be granted sparingly."  Id. at 19.  In order to prevail, the party seeking relief under Rule 60(b) must establish, at a minimum, four elements:

the "motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside," the movant has the "right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." Id.

Because the bankruptcy court has "intimate, first-hand knowledge of the case," it is "is best positioned" to examine whether these criteria are met. Id. Consequently, the grant or denial of a Rule 60(b) motion is reviewed for abuse of discretion. Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 132 (1st Cir. 2005). (I reject the Tax Division's argument that the bankruptcy judge did not exercise discretion in these proceedings. Br. of Appellant at 5, I.R.S. v. Murphy, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5)). In determining whether to uphold the bankruptcy court's determination, I may "affirm the bankruptcy court order on any ground apparent from the record on appeal." Perkins v. Mass. Dep't of Revenue, 507 B.R. 45, 48 (D. Mass. 2014) (quoting Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001)).

Rule 60(b) provides six discrete avenues to relief. See Fed. R. Civ. P. 60(b)(1)–(6). The parties agree that two of them are involved here: Clause (4), which applies to judgments that are "void"; and clause (6) the "catch-all," which permits relief for "any other reason." I treat them in reverse order, as the parties have done in their briefing.

*(A)*     ***The Rule 60(b)(6) Argument***

At first blush it would appear that, if the AUSA's medical impairment caused him to fail to file a sufficient response to the summary judgment motion, that circumstance should amount to "excusable neglect." Rule 60(b)(1)

specifically lists excusable neglect as a sufficient ground for vacating a judgment. The problem for the IRS, however, is that Rule 60(c)(1) imposes a one-year time limit for a motion based upon excusable neglect, a time limit far exceeded here. So instead, the IRS attempts to proceed under Rule 60(b)(6)'s standard of "any other reason that justifies relief" because it has no numerical time limit, only that the motion "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). In Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 393 (1993), however, the Supreme Court made clear that 60(b)(1) and 60(b)(6) are "mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." Id. at 393. The First Circuit has followed this rule, treating a Rule 60(b) motion based upon an attorney's illness as falling under 60(b)(1): "The court below correctly wrote off any possibility of relief under Rule 60(b)(6). It is a 'bedrock principle that clause (6) may not be used as a vehicle for circumventing clauses (1) through (5).'" Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co., 750 F.3d 1, 4 (1st Cir. 2014) (citation omitted).[9]

In Pioneer, the Supreme Court laid out the limited basis for obtaining the more forgiving time standard of 60(b)(6): "To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) . . . ." Pioneer Inv. Servs. Co., 507

---

[9] The Ninth Circuit has also treated lawyer impairment as falling under 60(b)(1). See Gravatt v. Paul Revere Life Ins. Co., 101 F. App'x 194 (9th Cir. 2004).

U.S. at 393 (citations omitted); accord Cotto v. United States, 993 F.2d 274, 280 (1st Cir. 1993). In an attorney mental impairment case, the Second Circuit said that if the movants had "been themselves neglectful," "*their motion would be cognizable not under Rule 60(b)(6) but under rule 60(b)(1)*." United States v. Cirami, 563 F.2d 26, 35 (2d Cir. 1977) (emphasis added).

Because I take the IRS's factual allegations that the AUSA was operating in a diminished capacity as true, I evaluate the motion for post-judgment relief under Rule 60(b)(6) as the IRS requests. I apply the factors that the First Circuit has articulated for Rule 60(b) generally: timeliness; exceptional (after Pioneer, extraordinary) circumstances; potentially meritorious defense; and unfair prejudice to the opposing party. Karak, 288 F.3d at 19.

The bankruptcy court found that the IRS failed to meet the first element, timeliness. In doing so, however, it necessarily referred to facts that fall under the extraordinary circumstances part of the analysis, and so I address it as well. As appears later, I assume that the IRS meets the third and fourth factors, ability to mount a meritorious defense and no significant unfair prejudice to the taxpayer.

### *Timeliness*

Four years—the time from the original bankruptcy court judgment until the Rule 60(b) motion—is a long time. Everyone—the parties, the court and the country—has an interest in litigation repose at some point. Therefore, motions to upset a judgment under Rule 60(b), including 60(b)(6), "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). "What is 'reasonable' depends on the circumstances." Cotto, 993 F.2d at 280 (citation omitted). A "Rule 60(b)(6)

motion is addressed to the sound discretion" of the court deciding it in the first instance, and can be reversed only if the court's "failure to find a justification for the . . . delay is so unwarranted as to constitute an abuse of discretion." Baus, 834 F.2d at 1121. Here the bankruptcy court found insufficient justification for the delay, so I turn to whether that conclusion, in Baus's words, was "so unwarranted as to constitute an abuse of discretion." Id.

For context, I observe that the First Circuit has upheld the denial of a 60(b)(6) motion where the delay was only sixteen months. Cotto, 993 F.2d at 280.[10] It also has upheld the grant of such a motion where the movant waited five years, see Baus, 834 F.2d at 1123. Moreover, the Supreme Court has said that a four-year delay after final judgment is not per se unreasonable. Klapprott v. United States, 335 U.S. 601 (1949).[11] Obviously the timeliness determination is fact-intensive.

Here, the AUSA's domestic partner informed the United States Attorney's office in late October, 2012, that the AUSA had dementia. By then, a substantial portion of his caseload had already been transferred to another attorney. In December, 2012, Tax Division counsel sought to reach an agreement to re-open discovery in the second adversary proceeding (Murphy's damages lawsuit) on the

---

[10] See also United States v. Berenguer, 821 F.2d 19, 21 (1st Cir. 1987) (upholding district court decision that one year and one week was too long); McEachern v. Corr., Maine Comm'n, 76 F.3d 370 (1st Cir. 1996) (upholding district court decision that 10 months was too long).

[11] In Klapprott, the Supreme Court found that the district court erred in dismissing a petition to set aside a default judgment brought four and one-half years after final judgment. In that case, the petitioner alleged that he was unable to defend against charges to strip him of citizenship because he was in jail, "weakened from illness," unrepresented, and fully occupied in his efforts to defend himself against criminal charges. In a plurality opinion, the Court held that even at that late date these circumstances "justif[ied] relief from the operation of the judgment." 335 U.S. at 614. In Klapprott, the Court recognized the signal importance of the citizenship rights at stake. Id. at 615.

basis of the AUSA's illness.  Yet the IRS did not move the bankruptcy court for 60(b)(6) relief from the 2010 summary judgment until May of 2014, more than 18 months after government lawyers learned that the AUSA was suffering from dementia.  The IRS claims that it could not move earlier because, until March of 2014, it did not have access to the AUSA's medical records laying the foundation for asserting that the dementia dated back to 2010.  But upon learning of the dementia in 2012, the government did not require *medical* evidence to re-examine promptly any performance issues in the preceding few years and seek relief.  See, e.g., Ituarte by Ituarte v. Chevrolet Motor Div., Gen. Motors Corp., No. 86 CIV. 2843, 1989 WL 10562, at *4-5 (E.D.N.Y. Feb. 2, 1989) (finding affidavits from the attorney and colleagues sufficient to demonstrate confusion and disorientation; "[a]n attorney's mental state can form the basis for Rule 60(b)(6) relief, even in the absence of medical evidence."); P. T. Busana Idaman Nurani v. GHR Indus. Trading Corp., 151 F.R.D. 32, 35 (S.D.N.Y. 1993) (same).

Here, Bankruptcy Judge Kornreich assessed the reasonableness of the delay in light of the extraordinary circumstances on which the IRS relied.  In his bench ruling, he said that "the extraordinary circumstances suggested by the government will not carry the day" because, although the *disability* could not have been "ascertained at the time," "appropriate review" of the AUSA's performance could have identified the failures or omissions, whatever their cause.  Tr. of Bench Ruling at 7–8, Murphy v. I.R.S., Adv. No. 09-2042 (June 25, 2014) (Bankr. ECF No. 80).  Thus, I turn to the asserted extraordinary circumstances as Judge Kornreich did.

### *Extraordinary Circumstances*

According to the First Circuit, it is "reasonable and consistent with precedent" to say that "an attorney's illness does not constitute a per se justification for Rule 60(b) relief." Rivera-Velazquez, 750 F.3d at 5 (the Rivera-Velazquez court does not describe the nature of the attorney's illness, but the moving party said that it had caused the attorney "to neglect the case." Id. at 3.). Indeed, attorney illness may not satisfy even Rule 60(b)(1): "Everything depends on context: a party seeking relief must persuade the court not only that his attorney was ill but also that the illness prevented *the party* from taking reasonable steps to prosecute the case or to inform the court of an inability to do so." Id. (emphasis added; case citations omitted).[12]

In Cirami, 563 F.2d at 35, the Second Circuit reversed a denial of 60(b)(6) relief where the lawyer at the time of an adverse summary judgment was "suffering from a mental disorder," id. at 31, observing that the litigants themselves had diligently pursued their claim and had not been neglectful. Id. at 33–35. The court pointed out that the movants filed their new motion just two and one-half months after they "learn[ed] the reason for [the attorney's] behavior and default," and said that if the parties had been neglectful themselves, their motion would fall under the one-year time limit of 60(b)(1). Id. at 32, 35.[13]

---

[12] A case cited by the IRS involving attorney impairment, Islamic Republic of Iran v. Boeing Co., 739 F.2d 464 (9th Cir. 1984), was also decided under an "excusable neglect" standard, in that case Fed. R. App. P. Rule 4(a)(5), allowing an extension of time for filing an appeal.

[13] Likewise, in P.T. Busana Idaman Nurani, 151 F.R.D. at 33–34, a case cited by the IRS, the court was careful to point out all the efforts the client took to find out what was going on when its lawyer neglected the case on account of mental illness. In still another case the IRS cites,

These references to the *party*'s responsibility create problems for the IRS's attempt to fit its motion here under 60(b)(6) and its argument that if the IRS were a private creditor, it would be entitled to relief and should not be treated differently as a government agency.  As I have described, cases granting 60(b)(6) relief to private litigants on account of lawyer disability generally point to the fact that the *litigant* was pursuing the claim diligently in the face of the lawyer's impairment.[14]  See Cirami, 563 F.2d at 35; see also Cantrell v. Knoxville Cmty. Dev. Corp., 60 F.3d 1177, 1180 (6th Cir. 1995) (equitable tolling may be appropriate where the litigant "pursued his claim diligently").  That litigant involvement did not occur here.  Instead, the IRS as an agency client of the AUSA was not actively involved in the litigation,[15] and the Tax Division of the Justice Department has not referred to any steps that the IRS insolvency unit, which *did*

---

Cantrell, 60 F.3d 1177, the court found that a lawyer's mental state might justify equitable tolling of a limitations period under Title VII of the Civil Rights Act, but added: "as lack of diligence by a claimant acts to defeat his claim for equitable tolling, Cantrell [the plaintiff claimant] should be required to present evidence of his diligence in pursuing the claim." Id. at 1180.

[14] This is important because the Supreme Court generally recognizes that a litigant is responsible for his/her choice of counsel and is bound by the lawyer's performance and decisions.  See, e.g., Link v. Wabash R. Co., 370 U.S. 626, 634 (1962); Rivera-Velazquez, 750 F.3d at 6 (case citations omitted):

> We are not without some measure of sympathy for a client whose lawyer lets him down.  But in litigation matters, lawyers act for their clients, and this case is not the first (nor will it be the last) in which the failings of an attorney are visited upon her client.  After all, it is settled beyond hope of contradiction that "the neglect of an attorney acting within the scope of his or her authority is attributable to the client."

Accord Cotto, 993 F.2d at 280.  Pioneer approved the application of 60(b)(6) rather than the excusable neglect and one-year limitation of 60(b)(1) only where the party was "faultless." Pioneer Inv. Servs. Co., 507 U.S. at 393.

[15] U.S. Department of Justice, *United States Attorneys' Manual* § 4–1.410 (1997) ("Authority over the disposition of a civil matter, once it is referred to the Department of Justice, resides in the Attorney General or his/her delegate, and the client agency may not control its handling or disposition.").

know about the adversary proceeding and adverse outcome, took.  As counsel for the government has stated:

> Well, the way the IRS and AUSAs and [the Tax Division of the DOJ] as well operate is largely Counsel make the decisions. They don't go back to their client for each litigating question. We don't for example, inform the IRS of the motion we are going to file in a case.  We don't ask the IRS for permission to file a motion.  We do not send the IRS motions to review.[16]

Tr. of Oral Argument to Reopen Damages Discovery at 27–28, Murphy v. I.R.S., Adv. No. 11-2020 (Apr. 7, 2014) (Bankr. ECF No. 169).

Given this reality of the lawyer/client relationship when the Justice Department represents an agency, the bankruptcy court was justifiably concerned about whether there were review mechanisms *within* the U.S. Attorney's Office or the Department of Justice to take its place, as that court assessed whether extraordinary circumstances made the delay reasonable.[17] Even if supervisors could not have identified the AUSA's disability in 2010, review certainly could have identified the asserted gross failing in the summary judgment response and the preceding discovery.  Tr. of Bench Ruling at 7–8, Murphy v. I.R.S., Adv. No. 09-2042 (July 25, 2014) (Bankr. ECF No. 80).[18]

---

[16] This statement occurred at oral argument in the second adversary proceeding in response to a question by the bankruptcy judge about the role of agencies in litigation.

[17] The Seventh Circuit has said:

> If the Executive Branch abandons a pending case, the district court should dismiss the litigation and devote its scarce time to the claims of parties seeking judicial attention. Supervision of Assistant United States Attorneys is a job for the Executive Branch, not for the Judicial Branch, and, if internal controls fail, the Executive Branch must accept the consequences.

United States v. Golden Elevator, Inc., 27 F.3d 301, 304 (7th Cir. 1994).  The same principle applies to the bankruptcy court.

[18] As appears from the transcript of Judge Kornreich's ruling in denying the motion to reopen discovery in the second adversary proceeding, the Justice Department and the U.S. Attorney's Office have made the decision that supervising a bankruptcy AUSA in a small District would be too burdensome, and they have taken on the risk that as a result they may miss ordinary neglect,

Instead, the AUSA "had considerable autonomy and independence," his "court filings did not undergo review or editing," R. Murphy Declaration at 2, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Feb. 28, 2014) (Bankr. ECF No. 142-2), and the IRS insolvency unit apparently did nothing to monitor how its case was handled.

The IRS argues that the AUSA was functionally a solo practitioner representing it, and thus the IRS should not be denied relief on the basis that he was not supervised. The IRS bypasses the need for client efforts to take the neglect here beyond the ordinary "excusable neglect" of 60(b)(1) to the extraordinary circumstances of 60(b)(6). Its argument stretches the extraordinary circumstances factor far beyond its ambit in previous cases.[19] As <u>Cirami</u> said: if the party is neglectful, then the lawyer's impairment falls under 60(b)(1) and is subject to the one-year limitation. <u>Cirami</u>, 563 F.2d at 35. Contrary to the IRS's contention, Brief of Appellant at 38, <u>I.R.S. v. Murphy</u>, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5), such a conclusion is not a court telling the Justice Department or the U.S. Attorney how to run their Executive Branch offices. It is only a determination that if they choose to take the risk of no agency review and no internal law office review, that choice seriously undercuts a later argument that medical impairments that produced inadequate performance are extraordinary circumstances.

---

errors and omissions and will not seek later relief as a result. Tr. of Status Conference on Mot. to Vacate at 6, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 8, 2014) (Bankr. ECF No. 65). But they resist expanding that assumed risk to defalcation that results from impairment, as here.

[19] The IRS has cited <u>Gravatt</u>, 101 Fed. Appx 194, as "particularly noteworthy," Br. of Appellant at 27-28, <u>I.R.S. v. Murphy</u>, No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5), because it is similar on its facts in an impaired attorney's failure to respond appropriately to a summary judgment motion. But the Ninth Circuit treated that circumstance of a medically impaired attorney as falling under the *excusable neglect* category, which does not help the IRS because it carries an outside limit of one year. <u>Gravatt</u>, 101 Fed. Appx at194–95.

### *Potentially Meritorious Defense*

The bankruptcy court did not explicitly address this factor. I assume, therefore, without deciding, that the IRS has a potentially meritorious defense on the merits of Murphy's claim. Murphy has not argued the contrary. I need not decide whether on this factor it would be sufficient to conclude that the IRS could have successfully resisted summary judgment or whether the IRS should also have to show that it would probably succeed at trial.

### *Unfair Prejudice to the Opposing Party*

The bankruptcy court did not explicitly address this factor. The IRS argues that there is no unfair prejudice to Murphy, that any freedom Murphy has had from tax liability was unjustified freedom. Murphy asserts that the various proceedings have already cost him over $100,000 in attorney fees. Pl.'s Opp'n to Rule 60(b) Mot. at 6, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 22, 2014) (Bankr. ECF No. 64). He has not specified which of those are a result of the AUSA's conduct and the IRS's delay. For purposes of this decision, I conclude that Murphy has not and would not suffer significant unfair prejudice if the motion were granted.

* * * * *

At the end of the day, "[t]he decision to grant or deny [60(b)(6)] relief is inherently equitable in nature," <u>Ungar v. Palestine Liberation Org.</u>, 599 F.3d 79, 83 (1st Cir. 2010), and Judge Kornreich's determination that this motion was not filed within a reasonable time is reviewed for abuse of discretion. <u>Roger Edwards, LLC</u>, 427 F.3d at 132. The delay here was long; in addition to the taxpayer's interests, as the passage of time lengthens the bankruptcy court has

an increasing institutional interest in repose, and attendant concern about other judgments that might be affected; although the AUSA's medical condition was extraordinary and not ascertainable at the time of the summary judgment motion, the subpar performance was easily identifiable if either the IRS or the U.S. Attorney's Office had furnished any review of the AUSA; the U.S. Attorney's Office and the Tax Division of the Justice Department became aware of the dementia issue at least 18 months before filing this motion, yet they did not file the motion until roughly one month after they obtained medical records specifying that its onset went back to the time of the summary judgment motion. Under all these circumstances, I conclude that the bankruptcy court did not abuse its discretion in ruling that the IRS filed its 60(b)(6) motion unreasonably late, although as a reviewing court I might well have affirmed a contrary decision as well.

### *The IRS's Request for Partial Relief*

The IRS's Rule 60(b)(6) motion also contained a "fall-back request" for partial relief. In this appeal, the IRS asks this court to announce that for future proceedings (particularly Murphy's pending lawsuit for damages still in the bankruptcy court) the June 22, 2010, order announcing that Murphy's tax debts were discharged will have no collateral estoppel or claim preclusion effect.

In the law of preclusion, however, the first court does not "get to dictate to other courts the preclusion consequences of its own judgment." Smith v. Bayer Corp., 131 S. Ct. 2368, 2375 (2011) (citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed. 2002)). Analogously here, I do not get to dictate to a later judge (it may or may not turn out to be me) what

preclusive effect the 2010 summary judgment should have. The appropriate avenue for relief from Bankruptcy Judge Haines's ruling that the first adversary proceeding summary judgment had the collateral estoppel effect of establishing liability in the second adversary proceeding is an appeal from final judgment after a damages determination in the second adversary proceeding. Murphy v. I.R.S., No. 2:14-mc-24-DBH, 2014 WL 840255, at *2 (D. Me. Mar. 4, 2014). That is when the collateral estoppel effect will be determined. Specifically, I do not now determine the proper scope, if any, of the collateral consequences of the 2010 judgment. Neither party should draw any inference on that question from this decision. The IRS's request for partial relief is **DENIED**.

### (B) The Rule 60(b)(4) Argument

The IRS argues that the 2010 judgment directing that it unwind its post-discharge 2006 reassignment of the payments of the $16,500 and $49,050 was void under Rule 60(b)(4). The bankruptcy court rejected the IRS's personal jurisdiction argument on this issue,[20] and the IRS has not challenged that part of the ruling. However, the bankruptcy court did not address the IRS's arguments that the judgment was void on the basis that: (1) the United States never waived sovereign immunity; and (2) the Tax Anti-Injunction Act withdrew any subject matter jurisdiction that the Bankruptcy Court might otherwise have

---

[20] The AUSA accepted service of Murphy's complaint on behalf of the IRS. The complaint did not specifically address the post-discharge reassignment of the pre-petition tax payments. In its motion for relief under 60(b)(4), the Tax Division suggested that the bankruptcy court did not have personal jurisdiction over the IRS on this aspect because the AUSA's consent to jurisdiction was limited to the four corners of the complaint. The bankruptcy court found that if the exercise of jurisdiction was an error of law, it should have been the basis of a timely appeal. Because there was no timely appeal, the bankruptcy court denied relief under 60(b)(4). Tr. of Bench Ruling at 9, Murphy v. I.R.S., Adv. No. 09-2042 (July 24, 2014) (Bankr. ECF No. 80).

had to redirect the crediting of pre-petition payments.  Unfortunately, Murphy's counsel did not address these arguments before the bankruptcy judge, except to argue that they had been waived by the failure to raise them at the time of summary judgment or to appeal the summary judgment ruling.  Pl.'s Opp'n to Rule 60(b) Mot. at 5–6, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 22, 2014) (Bankr. ECF No. 64).  In reply to the IRS bankruptcy appeal, Murphy's counsel principally argued that relief under 60(b)(4) was time-barred.  Br. of Appellee at 15, <u>I.R.S. v. Murphy</u>, No. 2:14-cv-340 (Oct. 1, 2014) (ECF No. 8).  However, Murphy's counsel also asserted that the IRS was attempting an "administrative end run around the discharge injunction," and that the IRS had waived sovereign immunity under Section 106(a).  <u>Id</u>.  Neither party furnished much in the way of caselaw.  By a Procedural Order, I asked them to address the 60(b)(4) issue in more detail at oral argument, and they did so, as well as by filing supplemental briefs.

Although denial of a motion for relief from a judgment is normally reviewed for abuse of discretion, the bankruptcy court has no discretion when deciding a motion to vacate a judgment as void, "because a judgment is either void or it is not."  <u>Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., v. Int'l Bhd. Of Elec. Workers Local 99</u>, 497 F.3d 83, 94 (1st Cir. 2007).  Accordingly, review is <i>de novo</i>.  <u>Id</u>.  Because there is no dispute about the relevant facts, no room for discretion, and only issues of law remain, remand to the bankruptcy court is unnecessary, <u>In re Rare Coin Galleries of America Inc.</u>, 862 F.2d 896, 900 (1st Cir. 1988), and I proceed to rule.

The 60(b)(6) timeliness assessment does not apply here. Although the plain language of Rule 60(b) seems to impose its reasonable time limit on a Rule 60(b)(4) motion,[21] the First Circuit like other courts has held that there is no time limit on Rule 60(b)(4) motions. <u>Sea-Land Serv., Inc., v. Ceramica Europa II, Inc.</u>, 160 F.3d 849, 852 (1st Cir. 1998) ("our precedent establishes that Rule 60(b)(4) motions cannot be denied on the procedural ground that they were not brought within a 'reasonable time' as required under Rule 60(b)."). Instead, a void judgment "may be set aside *at any time*" under Rule 60(b)(4). <u>Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.</u>, 953 F.2d 21, 23 (1st Cir. 1992) (emphasis in the original) (citing 11 C. Wright & A. Miller, Federal Practice & Procedure, § 2862 (1973)).

I turn therefore to the merits of the IRS's two arguments in support of its assertion that the bankruptcy court's 2010 summary judgment was void.

### *(1) Sovereign Immunity*

The United States' sovereign immunity cannot be waived by the acts or omissions of government counsel. <u>United States v. U. S. Fid. & Guar. Co.</u>, 309 U.S. 506, 513 (1940). Sovereign immunity can, however, be waived by statute. Under section 106(a)(1), the Bankruptcy Code waives sovereign immunity as to other enumerated sections of the Code: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [certain listed sections of

---

[21] "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

the Bankruptcy Code].'' 11 U.S.C. § 106(a)(1). "There is no doubt that § 106 is an express waiver of sovereign immunity," sufficient to meet the stringent standard for finding such a waiver. <u>United States v. Torres (In re Torres)</u>, 432 F.3d 20, 24 (1st Cir. 2005). Thus, the relevant issue is whether one of the sections listed in section 106(a)(1) gives bankruptcy courts the power to unwind a post-discharge IRS recharacterization of earlier tax payments.

I conclude that two sections enumerated under section 106(a)(1) together authorized the bankruptcy court's 2010 order and amount to a waiver of sovereign immunity. First, section 105 gives bankruptcy courts broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]" 11 U.S.C. § 105(a), listed in § 106(a)(1). Second, section 524 provides that a discharge "operates as an injunction against . . . an act, to collect, recover, or offset any such [discharged] debt as a personal liability . . . ." 11 U.S.C.A. § 524(a)(2), listed in § 106(a)(1). Taken together, these provisions amount to an unequivocal waiver of sovereign immunity to encompass an order compelling the IRS to unwind its wrongful post-discharge application of payments to discharged tax liabilities.[22] Here, before the bankruptcy discharge, the IRS applied Murphy's tax payments to his 2002 and 2003 tax liabilities. But after Murphy's debts were discharged and in violation of section 524, as the bankruptcy court found in 2010, the IRS reassigned Murphy's tax payments to 1993 and 1994 tax liabilities—liabilities that had been discharged in the Chapter 7 bankruptcy—thus allowing the IRS

---

[22] The IRS insists that its action was not wrongful, but the bankruptcy court concluded that it was.

to proceed against Murphy for the 2002 and 2003 tax liabilities without crediting the earlier payments. "The economic substance of the IRS's tap dance is inescapable: the Service is seeking to collect the tax penalty [in Murphy's case, the tax] that was discharged in bankruptcy." Langlois v. United States, 155 B.R. 818, 823 (N.D.N.Y. 1993).[23]  I conclude that the bankruptcy court has jurisdiction over such maneuvers. Sovereign immunity is no bar to the bankruptcy court's power to unwind what the IRS did in recharacterizing Murphy's tax payments after the 2006 bankruptcy discharge.

### (2) Tax Anti-Injunction Act

As an alternative to its sovereign immunity argument, the IRS relies on the Tax Anti-Injunction Act for its assertion that the bankruptcy court summary judgment against it in 2010 is void within the meaning of Rule 60(b)(4). Subject to certain exceptions not applicable here, the Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a).

Despite the Tax Anti-Injunction Act, the IRS concedes that Bankruptcy Code section 362's automatic stay[24] binds the IRS like private creditors, and that a bankruptcy court can reverse an IRS stay violation.[25]  But the IRS

---

[23] In Langlois, the district court acknowledged that the IRS may typically be able to apply involuntary or undesignated tax payments in its best interest, see Davis v. United States, 961 F.2d 867, 878 (9th Cir. 1992), cert. denied, 506 U.S. 1050 (1993), but not when a bankruptcy stay is in effect. The court reasoned that the "debtor's undisputed discharge of tax penalties limits the IRS's right to allocate the payments." Langlois, 155 B.R. at 823.

[24] When a bankruptcy case is first filed, the Bankruptcy Code creates an automatic stay preventing any creditor (with narrow exceptions) from pursuing a claim against the person filing the bankruptcy case so long as the bankruptcy case is pending. 11 U.S.C. § 362.

[25] "[W]e acknowledge that no administrative refund claim is required to reverse a stay violation because a stay violation is 'void.'" Appellant's Post-Argument Submission at 2, n.1, I.R.S. v. Murphy, No. 2:14-cv-340-DBH (Feb. 17, 2015) (ECF No. 18).

distinguishes the automatic stay from the automatic statutory injunction that results at the end of a bankruptcy case under Bankruptcy Code section 524,[26] and says that, here, the bankruptcy court cannot enforce that statutory injunction against the IRS.

Initially, I observe the shifting positions that the IRS has taken on this issue of the statutory injunction that discharge generates. (1) In the original adversary proceeding that taxpayer Murphy brought, the IRS did not raise the Tax Anti-Injunction Act as a defense in responding to Murphy's motion for summary judgment in which he asked the bankruptcy court to order the IRS to unwind its post-discharge reassignment of his pre-petition voluntary payments. In his adversary complaint, taxpayer Murphy asserted bankruptcy court jurisdiction under 28 U.S.C. § 157(b)(2)(I), which lists "determinations as to the dischargeability of particular debts" as within core bankruptcy jurisdiction. The IRS did not challenge the bankruptcy court's jurisdiction. (The IRS argues now that its failure was on account of the AUSA's medical issues, an argument that I have dealt with under the 60(b)(6) ruling.[27]) (2) In its 2014 motion in the bankruptcy court to vacate the 2010 judgment, the IRS conceded that despite the Tax Anti-Injunction Act the bankruptcy court could enforce the discharge

---

[26] The Bankruptcy Code provides that a bankruptcy discharge of debt "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2).

[27] The IRS also says that it had no "genuine" opportunity to contest jurisdiction, because the prayer for recharacterization of tax payments was not specified in the complaint as to which the AUSA waived service on the Attorney General. Appellant's Post-Argument Submission at 14, I.R.S. v. Murphy, No. 2:14-cv-340-DBH (Feb. 17, 2015) (ECF No. 18). The relief was specifically requested in the motion for summary judgment, however, and thus this is the same argument about the AUSA's medical issues.

injunction against the IRS *if* the IRS had violated the discharge, but argued that in Murphy's case the IRS had not violated the discharge injunction.[28] (The bankruptcy court ruled that it had, in granting the summary judgment motion). In the early briefing of the appeal to this court and up through oral argument, I believed that still to be the IRS's position. Br. of Appellant at 48–49, I.R.S. v. Murphy (In re Murphy), No. 2:14-cv-340-DBH (Sept. 10, 2014) (ECF No. 5). (3) In its latest Supplemental Memorandum, however, the IRS has changed its position and now argues explicitly that even if its post-discharge reassignment of Murphy's tax payments *did violate* the bankruptcy discharge statutory injunction, the Bankruptcy Court was unable to stop the violation or enforce the discharge injunction, and that the only relief available to unwind the IRS violation is a taxpayer administrative request for a refund and, if denied, then a lawsuit in a federal district court, not the bankruptcy court.[29] In other words, the IRS seeks to take the bankruptcy court out of the equation altogether.

---

[28] The IRS said that if the IRS had collected the money post-discharge, the bankruptcy court could invoke section 105 "to enforce the discharge injunction by reversing a violation." Br. for IRS at 29, Murphy v. I.R.S., Adv. No. 09-2042 (May 1, 2014) (Bankr. ECF No. 53). Because taxpayer Murphy had submitted his payments pre-petition and the IRS thought that it had a good reason to re-apply them, however, the IRS argued that "it is not appropriate to presume that [the bankruptcy court's] jurisdiction was properly founded on policing a discharge violation—at least not in the absence of some contemporaneous judicial explanation to that effect." Id. But those are contentions that the IRS lost on the summary judgment motion, and I conclude that Bankruptcy Judge Haines did give a "contemporaneous judicial explanation" of what he did. Judge Haines found no disputed facts, and the undisputed facts established that pre-petition the IRS had applied the payments to particular years and then post-discharge took them away from those years and applied them retrospectively to years that were discharged—thus, the IRS had violated the discharge injunction.

[29] "[Taxpayer Murphy] insists that the IRS's reapplication violated the discharge in § 524, and the United States maintains it did not; however, the point here is that this issue could only be adjudicated after the filing of an administrative claim for credit (from 1993 and 1994 back to years 2002 and 2003). . . . If the IRS refuses [a refund application], [the taxpayer] may then bring a refund suit *directly in this Court* under IRC § 7422 and 28 U.S.C. § 1346(a)(1) where he can present his argument that the IRS's reapplication violated the discharge . . . ." Appellant's Post-Argument Submission at 3, I.R.S. v. Murphy, No. 2:14-cv-340-DBH (Feb. 17, 2015) (ECF

In my Procedural Order of December 23, 2014, I indicated my need for greater assistance from the lawyers (than their briefing had so far provided) on the applicability of the Tax Anti-Injunction Act to IRS violations of the statutory discharge injunction. At oral argument, and in their supplemental briefing they have discussed a number of cases. Sadly, the applicable law is far from clear.

The text of the Tax Anti-Injunction Act and the text of the Bankruptcy Code are in obvious tension; the Tax Anti-Injunction Act protects the IRS from interference in its assessment and collection efforts;[30] the Bankruptcy Code creates remedies for violations of its stay and discharge provisions[31] and gives the bankruptcy courts authority to enforce the Code and protect their judgments. See, e.g., 28 U.S.C. § 157(b)(2)(I); 1-1 Collier on Bankruptcy P. 1.02 ("The discharge injunction is enforceable by way of a contempt proceeding in the bankruptcy court after a discharge has been granted or after a chapter 7 case has been closed.") The cases are divided on how to resolve this tension. See Prisco v. I.R.S., No. 1:13-MC-0066 LEK/CFH, 2013 WL 6004183, at *4 (N.D.N.Y. Nov. 13, 2013) (summarizing cases); In re Szwyd, 408 B.R. 547, 552–53 (D. Mass.

---

No. 18) (emphasis in original). At oral argument and in its supplemental brief the IRS added an additional argument, that the language of IRS Code § 7422 concerning civil actions for refund, makes it the taxpayer's only means of redress. Id. at 1–2. That new argument does not alter my conclusion, in the text of this decision, that the 2010 judgment is not void within the meaning of Rule 60(b)(4).

[30] The Tax Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a).

[31] 11 U.S.C. §§ 362(e), 524. I observe that Congress has recognized in the Internal Revenue Code a role for the bankruptcy court in policing IRS violations of the statutory discharge. It has provided that when a claim is made that an IRS employee has engaged in a willful violation of a section 524 bankruptcy discharge, a taxpayer may seek damages and may make that claim in the bankruptcy court. 26 U.S.C. § 7433(e). But section 7433(e) is not the basis for the bankruptcy court's summary judgment that is at issue here.

2009) (same); see also Note, Bankruptcy Court Jurisdiction and the Power to Enjoin the IRS, 70 Minn. L. Rev. 1279 (1986).[32]   The First Circuit and the Supreme Court have taken a broad view of bankruptcy courts' power vis-à-vis the IRS.   In re Energy Res. Co., Inc., 871 F.2d 223, 230, 234 (1st Cir. 1989) (upholding an order directing the IRS to attribute tax payments to employment "trust fund" debt first and other debt second, even though that might result in the IRS collecting less from other persons "responsible" for the employment trust fund debt), aff'd sub nom. United States v. Energy Res. Co., 495 U.S. 545 (1990). But many courts limit Energy Resources to chapter 11 reorganizations, see, e.g., In re Kare Kemical, Inc., 935 F.2d 243, 244 (11th Cir. 1991), or chapter 11 liquidating plans, In re Deer Park, Inc., 10 F.3d 1478, 1482 (9th Cir. 1993), or express doubt that it could apply to chapter 7 proceedings.   United States v. Pepperman, 976 F.2d 123, 130 (3d Cir. 1992) ("We need not decide in this case whether there may be some unusual circumstances in which we could apply the broad reading of *Energy Resources* . . . to authorize a bankruptcy court in a Chapter 7 proceeding to credit [tax payments in a particular way].   The underlying premise of such authority must be a finding that such an order 'is

---

[32] The primary circuit cases on either side of the issue are Bostwick v. United States, 521 F.2d 741 (8th Cir. 1975) and In re Becker's Motor Transportation, Inc., 632 F.2d 242 (3d Cir. 1980) (divided decision), cert. denied, 450 U.S. 916 (1981).   In A to Z Welding & Manufacturing Company, Inc. v. United States, Internal Revenue Service, 803 F.2d 932 (8th Cir. 1986), the Eighth Circuit clarified that the Tax Anti-Injunction Act does not prevent discharged debtors from pursuing a discharge violation against the IRS but that it does prevent third parties who were not the discharged debtors (in A to Z Welding, officers and shareholders pursued in their personal capacities whereas the discharged debtor was the corporation) from doing so.   A recent case finding that the Bankruptcy Code gives the bankruptcy court power to police IRS discharge violations despite the Tax Anti-Injunction Act is In re Moore, No. 08-40118-JTL, 2013 WL 4017936, at *5 (Bankr. M.D. Ga. Aug. 6, 2013): "The discharge injunction is an order of this Court.   That this Court can decide whether its orders are being violated is self-evident. . . . Nothing in the Tax Anti-Injunction Act states this Court cannot enforce a discharge order."

necessary or appropriate to carry out the provisions of [the Bankruptcy Code].'")
(citing 11. U.S.C. § 105).

Some of the cases have characterized the Tax Anti-Injunction Act as
jurisdictional, a part of sovereign immunity, unwaivable (at least up through
appeal), see, e.g., Morris v. United States, 540 Fed. Appx. 477, 479–81 (6th Cir.
2013), and applicable to bankruptcy courts. Prisco, 2013 WL 6004183, at *4
(summarizing cases). Some cases recognize a limited "judicially created
exception for taxpayers," Randell v. United States, 64 F.3d 101, 106–07 (2d Cir.
1995), relying on Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7
(1962), a recognition that is hard to reconcile with the jurisdictional and
sovereign immunity label. (Recognition of the exception suggests the possibility
that the defense could be waived by admitting that the exception applies.)

In any event, all of the cases that the parties have cited and that I have
found address the effect of the Tax Anti-Injunction Act when the IRS raises it
*during a proceeding that requests relief against the IRS*. None of them deals with
asserting the Act *later* in an attempt to vacate an unappealed final judgment
against the IRS, the situation here.[33]

I therefore turn to that issue of a collateral attack under Rule 60(b)(4). A
well-regarded treatise discussing Rule 60(b)(4)'s provision for void judgments

---

[33] They are also highly factual-dependent. For example, Cherbanaeff v. United States, 77 Fed.
Cl. 490, 502 (2007) aff'd, 300 F. App'x 933 (Fed. Cir. 2008), a case cited by the IRS, states: "26
U.S.C. § 7433(e) vests bankruptcy courts with 'exclusive jurisdiction' over claims that the IRS
has violated bankruptcy discharges." But I take that statement to be restricted to claims for
damages against the IRS, not the subject of the summary judgment that the IRS is collaterally
attacking here. In re Packer, No. 07-10556-JMD, 2007 WL 3331534 (Bankr. D.N.H. Nov. 6,
2007) was a case where the bankruptcy judge refused to confirm a chapter 13 plan that sought
to direct the IRS how to apply a tax refund because IRC § 6402(a) gives allocation authority to
the IRS. Id. at *3–4. But Packer was not a case where the IRS had violated a discharge. Id.

states: "a court's determination that it has jurisdiction of the subject matter is binding on that issue . . . if a party had an opportunity to contest subject-matter jurisdiction and failed to do so." 11 Wright & Miller, Federal Prac. and Proc. § 2862 (3d ed. 2014). The cases support that view in the First, Second and Seventh Circuits:

> In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void.

Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972). Likewise:

> We assume without deciding that appellees correctly claim that this case was improperly removed and the district court improperly exercised its jurisdiction when it "so ordered" the stipulation. Nonetheless, the judgment entered in federal court was not void. Appellees could have moved to remand the action to state court after its improper removal to federal court, or challenged the district court's exercise of jurisdiction on direct appeal. Because they did neither, they are now barred by principles of res judicata and the interest in finality of judgments from mounting a collateral attack on a prior judgment in the present action.

Nemaizer v. Baker, 793 F.2d 58, 64 (2d Cir. 1986); accord Bell v. Eastman Kodak Co., 214 F.3d 798, 801–02 (7th Cir. 2000) ("a lack of subject-matter jurisdiction is not by itself a basis for deeming a judgment void, that is, open to collateral attack." Ineffective assistance of counsel does not provide an excuse).

I see no reason why those precedents do not apply to the IRS request for Rule 60(b)(4) relief here. Bankruptcy Judge Haines found that post-discharge the IRS had acted wrongfully and contrary to the bankruptcy discharge. Order

Granting Mot. for Summ. J., <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (June 22, 2010) (Bankr. ECF No. 48).[34]  Given that finding, the bankruptcy court was acting to enforce section 524 and aptly protecting its previous discharge injunction.  As the Seventh Circuit has declared, "[t]he remedy authorized by section 524(a)(2) has the advantage of placing responsibility for enforcing the discharge order in the court that issued it. . . .  The court that issued the discharge order is in a better position to adjudicate the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy." <u>Cox v. Zale Delaware, Inc.</u>, 239 F.3d 910, 916 (7th Cir. 2001) (Posner, J.).  The First Circuit agrees:  "a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524," and indeed "a court is well within its authority if it exercises its equitable powers to enforce a specific code provision . . . such as § 524." <u>Bessette v. Avco Fin. Servs., Inc.</u>, 230 F.3d 439, 444–45 (1st Cir. 2000).[35] Judge Haines had no reason to think that his Order was usurping power and beyond his jurisdiction.  Although his decision was appealable, the judgment was not void.[36]

---

[34] I find confusing and distracting the IRS's new argument that a recent ruling by Bankruptcy Judge Kornreich on a motion *in limine* in the section 7433(e) damages action against it means that a cause of action for damages did not occur until the IRS issued actual levies on February 20, 2009, Appellant's Post-Argument Submission at 4, <u>I.R.S. v. Murphy</u>, No. 2:14-cv-340-DBH (Feb. 17, 2015) (ECF No. 18), and that therefore its reapplication of Murphy's tax payments in 2006 could not have been not a violation of the bankruptcy discharge. <u>Id</u>.  Regardless of when damages began to accrue within the meaning of section 7433(e), Judge Haines was entitled to find that the reapplication itself was a discharge violation that justified a reversal of the treatment.

[35] The First Circuit allows a federal district court, as well as the bankruptcy court, to enforce a 524 discharge injunction.  <u>Bessette</u>, 230 F.3d at 445–46.

[36] I observe that the IRS has not argued that the bankruptcy court ran afoul of the Tax Anti-Injunction Act in *determining* that the IRS's post-discharge reallocation of prepetition payments was in violation of the bankruptcy court's discharge injunction under Section 524.  <u>See, e.g.</u>, <u>In re Ellett</u>, 254 F.3d 1135, 1147–49 (9th Cir. 2001), <u>as amended on denial of reh'g and reh'g en banc</u> (Aug. 27, 2001) (bankruptcy court has power to determine tax liability in determining what

**CONCLUSION**

The Bankruptcy Court's 2010 summary judgment order was not void, <u>see</u> Fed. R. Civ. 60(b)(4). The AUSA's medical condition is tragic, and any IRS loss that occurred on account of his impairment is unfortunate, but the bankruptcy court did not abuse its discretion in concluding that under all the circumstances the government failed to seek relief under Rule 60(b)(6) within a reasonable time.

I **AFFIRM** the decision of the bankruptcy court.

**SO ORDERED.**

**DATED THIS 24TH DAY OF FEBRUARY, 2015**

/S/D. BROCK HORNBY     
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

is discharged). Thus, even if the bankruptcy court did exceed its power by explicitly ordering the IRS to reassign the prepetition payments, the *determination* that the IRS had violated the discharge under section 524 nevertheless would remain, and Murphy still would have the ability to assert that ruling elsewhere (subject to whatever is the ultimate decision on the collateral estoppel argument mentioned earlier in this decision), such as in his pending second adversary proceeding under Internal Revenue Code Section 7433(e) for damages.